UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TRIA M. GRAVES,                         Case No.  1:15-cv-431

       Plaintiff,                          Judge Timothy S. Black

vs.

STARBUCKS COFFEE COMPANY/
STARBUCKS CORPORATION,

       Defendant.

**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (Doc. 23)**

This civil action is before the Court on Defendant's motion for summary judgment

(Doc. 23) and the parties' responsive memoranda (Docs. 29, 30).

## I.  BACKGROUND FACTS

Plaintiff, Tria M. Graves, was an employee of Defendant from 2002–2014, serving

most recently as store manager at Defendant's Rookwood location.  On August 4, 2014,

Defendant terminated Plaintiff's employment.  Defendant alleges that the reason for

Plaintiff's termination was her failure to obtain her Food Safety Certification ("FSC"),

which was a Starbucks internal requirement for all store managers.  Plaintiff alleges that

Defendant's proffered reason for terminating Plaintiff was mere pretext, and that

Defendant actually terminated Plaintiff based on various unlawful motivations.

Accordingly, Plaintiff brought this action in the Hamilton County, Ohio, Court of

Common Pleas alleging claims of age discrimination, racial discrimination, retaliation,

discharge in breach of public policy, breach of contract, promissory estoppel, intentional

infliction of emotional distress, breach of fiduciary duty, breach of good faith and fair dealing, unjust enrichment, and fraudulent misrepresentation. (Doc. 4). Defendant removed the complaint to federal court on the basis of diversity jurisdiction. (Doc. 1).

On May 31, 2016, Defendant moved for summary judgment on all of Plaintiff's claims. (Doc. 23). Plaintiff filed a response in opposition on July 8, 2016 (Doc. 29), and Defendant filed a reply on July 25, 2016. (Doc. 30).

## II. UNDISPUTED FACTS

1. Ms. Graves applied for employment at Starbucks on February 4, 2000 as a Store Manager and began her employment on March 3, 2000. (Doc. 24, at 6; Doc. 24-1, at 1).

2. After serving as a Store Manager at Defendant's Tri-County and East Hyde Park locations, Ms. Graves became the Store Manager ("SM") of Defendant's Rookwood ("Rookwood") location in May, 2003. (Doc. 23-1, at 1).

3. As a SM, Ms. Graves reported to the District Manager ("DM") in charge of District 1007. (Doc. 24, at 8). Relevant to this case, from November, 2012 until March, 2014 Ms. Graves reported to DM James Lennox ("Lennox"). (*Id.*; Doc. 25, at 6). In March, 2014 Jessica Young ("Young") assumed responsibility for District 1007 after Lennox went out on extended medical leave and eventually passed away. (*Id.*).

4. Ms. Graves reported to Young from March, 2014 until August, 2014 when Ms. Graves' employment with Defendant was terminated. (Doc. 25, at 6).

2

5.    Throughout her employment with Defendant, including her time as Rookwood SM, Ms. Graves received pay increases.  In fact, Ms. Graves received a pay increase after every performance review with Defendant.  (Doc. 24, at 7).

6.    In November, 2012 Ms. Graves was informed that as a Store Manager she was required to obtain a food safety certification ("FSC").  (Doc. 23-1, at 2).

7.    Ms. Graves was terminated from her position as Rookwood Store Manager on August 4, 2014 after failing to obtain her FSC within twenty-one (21) months of it being required.  (Doc. 24-1, at 10).[1]

8.    Following her termination, Ms. Graves was replaced at the Rookwood Store by an African American male, Auguste Turin, who was 53 years old.  (Doc. 24, at 26; Doc. 23-1, at 4).

9.    Defendant's retail locations in the Cincinnati Area, including Rookwood, serve coffee, premium teas, pastries, and other fare.  (Doc. 23-1, at 3).  Given Defendant's existence in the food service industry, food safety is an integral part of Defendant's day-to-day activities.  (Doc. 24, at 4).

10.    As a result of the importance of food safety, Defendant established a Companywide policy requiring all U.S. and Canadian SMs to earn a food

---

[1] Plaintiff admits that Defendant cited the failure to obtain an FSC as the reason behind her termination, but alleges that this was an excuse to mask Defendant's true motives in terminating her.

safety certification in accordance with its "in-house food safety certification program" (hereinafter "FSC policy"). (Doc. 24-1, at 59).[2]

11.    Ms. Graves agrees Defendant has a legitimate business interest in ensuring that its SMs have Food Safety Certifications ("FSC"). (Doc. 24, at 14).

12.    Defendant communicated the FSC policy to the Cincinnati market in 2012. (Doc. 25, at 19). As a result, in November, 2012 Lennox emailed all District 1007 SMs informing them of the requirement to obtain a FSC. (Doc. 2-1, at 2). Ms. Graves admits she was aware of the requirement to obtain a FSC as early as November, 2012 ("First Notice"). (R. 24, at 13).[3]

13.    To obtain the FSC, SMs are required to complete training modules and take a written test. (*Id.* at 16–17). According to Ms. Graves, the training modules and test took forty-two (42) hours to complete. (*Id.* at 17).

14.    SMs complete FSC training modules online on Defendant's MyLearning website. Ms. Graves logged into the MyLearning webpage to complete training and as a result an electronic record exists of the dates and times she logged in and completed modules. (*Id.* at 23).

15.    On February 14, 2013 Lennox sent out an email to all District 1007 SMs, including Ms. Graves, who had not obtained their FSC. He reiterated that SMs were required to be certified ("Second Notice"). (Doc. 23-1, at 6).

---

[2] Plaintiff admits that food safety is important but denies that it was the motivating factor behind implementing the FSC Policy as she cannot discern Defendant's state of mind.

[3] Plaintiff specifically denies any reference to or as a "First Notice" in the email.

Ms. Graves admits that at this time, similar to the First Notice three (3) months earlier, she understood that Lennox expected her to obtain her FSC. (Doc. 24, at 16).[4]

16. On October 2, 2013 Lennox filled out Ms. Graves' annual performance review. (Doc. 23 Ex. E, 2013 Review). There Lennox stated, "Tria has had 9 months to achieve her food safety certification as of this time I am filling out her review it has yet to be achieved. Tria is [p]utting herself, the company at risk, also it's a critical on [her] QASA inspection not being certified." ("Third Notice"). (*Id.*). Ms. Graves acknowledges that as of the Third Notice, Lennox had expected her to have already completed the FSC. (T. Graves Dep. at 66).[5]

17. On November 13, 2013 EcoSure, an independent third party auditing company, conducted a "Quality Assurance Standards Audit" at Rookwood. (Doc. 23-1, at 7–9). Rookwood received a score of 88%, or a failing score under Defendant's target audit standards. (Doc. 25, at 15; Doc. 26, at 10). EcoSure noted that Ms. Graves' failure to obtain her FSC constituted a

---

[4] Plaintiff specifically denies any reference to a "First Notice" or "Second Notice" in the email.

[5] Plaintiff states that this statement mischaracterizes her deposition testimony, as she testified that Lennox "was expecting [her] to get it done." Additionally, Plaintiff denies any reference to or as a "Third Notice" in the performance review.

"Critical" priority that needed to be corrected at Rookwood. ("Fourth Notice"). (Doc. 23-1, at 10–12; Doc. 24, at 19).[6]

18. By the next EcoSure audit at Rookwood, conducted on April 12, 2014, Ms. Graves had still not obtained her FSC. Rookwood again failed to obtain the target audit standard. (Doc. 23-1, at 13–15). Similar to the Fourth Notice five (5) months earlier, EcoSure noted that Rookwood did not have any partners with a valid FSC in the store and again designated the need as a "Critical" propriety. ("Fifth Notice"). (*Id.*; Doc. 24, at 20).[7]

19. Twelve days later, on April 24, 2014, acting DM Young, who had recently taken over for the incapacitated Lennox, met with Ms. Graves at the Rookwood store and conducted a Detailed Store Visit ("DSV"). (Doc. 23-1, at 16–18). There, Young informed Ms. Graves that she must have her FSC completed six weeks later, by the end of May, 2014 ("Sixth Notice"). (*Id.*; Doc. 24, at 20; Doc. 25, at 12).[8]

20. On May 29, 2014 Ms. Graves contacted Young and informed her that she could not complete the FSC by the end of May, 2014 as required. (Doc. 24, at 20). As a result, Ms. Graves requested that Young provide her an additional month to complete the FSC. Young acquiesced. (*Id.*).

---

[6] Plaintiff denies any reference to or as a "Fourth Notice" in the document, and also states that the actual Food Safety Score was 92%, which was above Defendant's target.

[7] Plaintiff denies any reference to or as a "Fourth Notice" or "Fifth Notice" in the documents.

[8] Plaintiff denies any reference to or as a "Sixth Notice."

21.     In an email dated June 11, 2014 Young reiterated the urgency of Ms.

Graves' need to obtain her FSC and reminded her that obtaining an FSC

was a requirement as of November, 2012.  ("Seventh Notice").  (Doc. 23-1,

at 19).  Young also advised Ms. Graves that she was the only SM in the

district who had not obtained an FSC and asked what support, if any, she

could provide to allow her to complete the FSC in June, 2014.  (*Id.*).

Consistent with Young's email, Ms. Graves admits she is unaware of any

other SMs that failed to obtain their FSC.  (Doc. 24, at 20).[9]

22.     As of June 25, 2014, Ms. Graves had still not completed her FSC. As a

result of this ongoing issue, as well as several other areas of concern,

Young and Partner Resource Manager Jennifer Manning ("Manning") met

with Ms. Graves and issued her a Final Written Warning ("Eighth Notice").

(Doc. 23-1, at 20–24).  Specifically, the Final Written Warning stated:

> "Food Safety Certification must be obtained by you within 30 days
> of receiving this memorandum. Failure to meet the Store Manager
> Food Safety Certification requirement will result in employment
> separation."  (*Id.*) (emphasis in original).

As of June 25, 2014 Ms. Graves admits she was aware that if she did not

complete her food certification in thirty (30) days she would be terminated.

(Doc. 24, at 22).[10]

---

[9] Plaintiff denies any reference to or as a "Seventh Notice" in the email.

[10] Plaintiff admits what the document says but denies the accuracy of the statements therein, and also alleges that her testimony is mischaracterized as it related to her "awareness."  Plaintiff also denies any reference to or as an "Eighth Notice" in the final written warning.  Finally, Plaintiff clarifies that the final written warning was not signed or dated by Defendant when it was presented to her, and that she also did not sign or date the document.

23.     On or about July 25, 2014 Young called Ms. Graves to discuss the roll-out

        of a new pastry line and the status of her FSC.  According to Ms. Graves'

        recollection, Young asked her how the FSC was coming and Ms. Graves

        replied, "I completed all of the modules.  I took the exam of 80 questions.  I

        missed 20.  I need to repeat the exam and then I am ready for certification"

        to which Young replied, "email me when you get it done."  (*Id.* at 12).

24.     Young's testimony confirms this exchange on or about July 25, 2014, albeit

        in slightly greater detail:

        Q:     And if she missed a certain number of questions, she had to retake
               the test correct?
        A:     Correct.
        Q:     And do you recall what you told her after she told you that?
        A:     I left it at that and said that I needed an e-mail when she had certified
               and actually passed the test.

        (Doc. 25, at 25).

25.     On July 29, 2014 Ms. Graves began a vacation which lasted until August 4,

        2014.  (Doc. 24, at 12).

26.     Between July 25, 2014 and August 4, 2014 Graves did not complete her

        FSC or email Young that she had completed it.  (*Id.*).

27.     Following Eight Notices over a twenty (20) month period and Young's

        statement that Ms. Graves would be terminated if she did not complete her

        FSC within the next thirty (30) days, Ms. Graves still had not obtained her

FSC as required by Defendant. (*Id.* at 25). As a result, Young terminated Ms. Graves' employment on August 4, 2014. (Doc. 23-1, at 25–26).[11]

28. Of the 14 SMs in District 1007, Ms. Graves was the only SM who failed to obtain her FSC by August, 2014. (Doc. 25, at 18).

29. Of the 14 SMs in District 1007 in 2014, three (3), including Ms. Graves, were African-American. (*Id.* at 6; Doc. 24, at 26). The other two African-American SMs completed their FSC and remain employed by Starbucks as of May 31, 2016, when Defendant's Motion for Summary Judgment was filed. (Doc. 23-1, at 4).

30. In her application for employment at Starbucks, Ms. Graves acknowledged that employment at Starbucks was "at-will." Specifically, Ms. Graves acknowledged: "I understand that nothing contained in this application, or conveyed during any interview which may be granted, is intended to create an employment contract," and "I understand and agree that my employment is at will, which means that it is for no specified period and may be terminated by me or Starbucks at any time without prior notice for any reason." (Doc. 24-1, at 2).[12]

31. On October 16, 2004, Ms. Graves executed a separate acknowledgment stating that she received the Partner Guide for U.S. Stores and would be

---

[11] Plaintiff denies that Defendant's motivation for firing her was really due to her failure to obtain an FSC. Additionally, Plaintiff denies any reference to or as "Eight Notices."

[12] Plaintiff admits the language in the documents but states that she was terminated for cause, not at will, and so the applicability of the at will doctrine is not an issue in this case.

expected to abide by its contents.  Here again, Ms. Graves acknowledged that her "employment with Starbucks Coffee Company is at will and may be terminated at any time, with or without notice."  (*Id.* at 3; Doc. 24, at 8).[13]

32.  Throughout the duration of her employment with Defendant, Ms. Graves never had a written agreement with Defendant that specified or guaranteed any terms of employment.  (Doc. 24, at 8, 28).

33.  No one in Defendant's management ever promised Ms. Graves that she would have a job until age sixty-five (65) or any other specific age.  (*Id.* at 26).[14]

34.  Upon her termination, Ms. Graves was paid for all wages that she was due. (*Id.* at 28).

35.  Plaintiff filed a charge alleging race and age discrimination and retaliation with the Equal Employment Opportunity Commission on January 26, 2015. (Doc. 24-1, at 49–52).

36.  After the Commission dismissed the charge on February 27, 2015, Plaintiff filed this lawsuit.  (*Id.*).[15]

---

[13] Plaintiff admits the language in the documents but states that she was terminated for cause, not at will, and so the applicability of the at will doctrine is not an issue in this case.

[14] Plaintiff admits that no one promised her a job until age 65 but denies this statement as to any representations regarding indefinite continuing employment.

[15] Plaintiff admits that the administrative history speaks for itself, and adds that a right to sue letter was issued by the EEOC.

37.  Plaintiff brought causes of action against Defendant for age discrimination, race discrimination, and retaliation under the Ohio Civil Rights Act ("OCRA"), wrongful discharge in violation of public policy, breach of contract, promissory estoppel, intentional infliction of emotional distress, breach of fiduciary duty, breach of good faith and fair dealing, unjust enrichment and fraudulent representation.  (Doc. 4, at 6–11).

### III.     STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.  All facts and inferences must be construed in a light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . .  must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248 (1986).

## IV.   ANALYSIS

### A.   Plaintiff's claim of racial discrimination is without merit.

Plaintiff claims that Defendant's termination of her employment discriminated against her on the basis of race.  According to the Complaint, "Defendant discharged Plaintiff without just cause and otherwise discriminated against Plaintiff on account of her race, in contravention of applicable laws, including ORC Chapter 4112."  (Doc. 4, at 4).

Ohio's anti-discrimination statute closely parallels the federal statute, and when analyzing a claim pursuant to O.R.C. § 4112, Ohio courts rely on cases interpreting both Title VII of the 1964 Civil Rights Act and the Age Discrimination in Employment Act of 1967 for guidance.  *Whitt v. Lockheed Martin Utility Serv., Inc.*, 209 F. Supp. 2d 787, 792 (S.D. Ohio 2002) (citing *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Right Comm'n.*, 421 N.E.2d 128, 131 (Ohio 1981); *Bucher v. Sibcy Cline Inc.*, 738 N.E.2d 435, 442 (Ohio Ct. App. 2000)).

A claim alleging racial discrimination in employment is analyzed under the burden of proof-shifting framework articulated by the Supreme Court in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under this framework, the burden is on the plaintiff to first establish a *prima facie* case of discrimination.   Once the plaintiff has done so, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the disputed employment action. *McDonnell-Douglas Corp.*, 411 U.S. at 802.  If the defendant can satisfy this burden, the burden shifts back to the plaintiff to demonstrate "that the proffered reason was not the true reason for the

employment decision." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

### 1. Plaintiff cannot establish a *prima facie* case of racial discrimination.

Here, Plaintiff's racial discrimination claim fails at the first step of the *McDonnell-Douglas Corp.* analysis, because Plaintiff cannot state a *prima facie* case of racial discrimination.  To state a *prima facie* case of racial discrimination, Plaintiff must prove that: (1) she was a member of a protected class; (2) she suffered an adverse job reaction; (3) she was qualified for the position in question; and (4) she was replaced by a person outside the protected class or that relative to the same conduct, she was treated differently than non-minority employees. *See, e.g.*, *Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 906 (6th Cir. 2002).

There is no dispute that Plaintiff's case possesses the first two elements of a *prima facie* case for racial discrimination—Plaintiff is a member of a protected class as an African-American and she was terminated from her job.  However, based upon the undisputed facts of the case, Plaintiff was not qualified for her position and she was neither replaced by a non-member of her protected class nor treated differently than non-minority employees.

### a. Plaintiff was unqualified for her position.

Plaintiff was not qualified for the position of Starbucks store manager when she was terminated, and so cannot establish a *prima facie* case of racial discrimination relating to her termination.  Defendant's proffered reason for terminating Plaintiff was

her failure to complete her FSC. Starbucks' company policy is that all store managers are required to hold an FSC. (Doc. 24-1, at 59). Plaintiff does not contest that she did not obtain her FSC. Courts within the Sixth Circuit have routinely held that a plaintiff is not "qualified" for the purposes of establishing a *prima facie* case of discrimination where she fails to obtain a certification required by her employer. *See, e.g.*, *Wilson v. Ford Motor Co.*, 513 F. App'x 585 (6th Cir. 2013) (upholding summary judgment where plaintiff was not qualified because she did not obtain certification); *Leeds v. Potter*, 249 F. App'x 442 (6th Cir. 2007) (upholding summary judgment for defendant where plaintiff was unqualified for the position of forklift operator due to a lack of licensure); *Rayess v. University of Cincinnati*, 1998 U.S. App. LEXIS 2108 (6th Cir. 1998) (plaintiff could not establish a *prima facie* case of discrimination based on national origin as he was not qualified for the position without having passed a licensing exam).

In her response, Plaintiff seems to suggest that the FSC was not an essential certification, stating that the FSC was an internal certification by Starbucks and not a governmental certification. (R. 29, at 23). Plaintiff also notes that "there were never any governmental citations regarding food safety or concerns regarding Plaintiff's store during her tenure [and] there is no evidence of customer issues or complaints concerning food safety at the Rookwood store (e.g. signs of roaches, etc.)." (*Id.*). However, it is not a requirement that a certification be governmentally imposed to be a requirement for employment qualification, and "[q]uestioning [an employer's] hiring criteria is not within the province of this court[.]" *Wilson*, 513 F. App'x at 589 (quoting *Browning v. Dep't of Army*, 436 F.3d 692, 698 (6th Cir. 2006)). It is undisputed that holding an FSC was an

14

objective, internally-imposed requirement for Starbucks store managers, and Plaintiff did not have an FSC. Therefore, Plaintiff was unqualified for the position of Starbucks store manager.

### b. Plaintiff was not replaced by a non-class member nor treated differently from non-class members

Furthermore, Plaintiff cannot demonstrate a *prima facie* case of racial discrimination because she was neither replaced by a non-member of her protected class nor was she treated differently than non-minority employees for similar conduct. The manager who replaced Plaintiff as manager of the Rookwood location following Plaintiff's termination was an African-American man. (Doc. 23, at 3). Therefore, in order to present a *prima facie* case of racial discrimination, Plaintiff must show that, relative to the same conduct, she was treated differently than non-minority employees. *See, e.g.*, *Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 906 (6th Cir. 2002).

Plaintiff's response contains allegations relating to disparate treatment of African-Americans by Starbucks (Doc. 29, at 6–15), but none of those allegations allege disparate treatment of individuals similarly situated to Plaintiff, *i.e.*, store managers. As a store manager, Plaintiff's job requirements were different than those of her employees; most notably, only store managers were required to get an FSC. (Doc. 24-1, at 59). In order to demonstrate that she was treated disparately from a nonminority employee relative to the same conduct, Plaintiff would need to demonstrate that she was terminated for failure to obtain her FSC when another, non-minority employee was not held to the same standard. Plaintiff cannot make this case, as she was the only store manager in her district to not

have her FSC at the time of her termination, 20 months after the FSC requirement was imposed.  (Doc. 23, at 7-8).

> **2.  Defendant had a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.**

Because Plaintiff cannot establish a *prima facie* case of racial discrimination, that claim fails as a matter of law.  However, even were Plaintiff able to state a *prima facie* claim, Defendant would be able to shift the burden of proof back to Plaintiff by articulating a legitimate, nondiscriminatory reason for terminating her employment. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).  Here, Defendant meets its burden by explaining that the reason Plaintiff was terminated was her failure to obtain her FSC certification despite several warnings over a 20-month period. Defendant implemented a companywide policy requiring that all store managers possess an FSC, and, as a restaurant, Starbucks has a particular interest in ensuring that the leadership at its stores has a minimum standardized knowledge regarding food safety.

> **3.  Plaintiff cannot demonstrate that Defendant's nondiscriminatory reason for her termination was mere pretext.**

Once Defendant offers a legitimate, nondiscriminatory reason for terminating Plaintiff's employment, the burden shifts back to Plaintiff to show by a preponderance of the evidence either that Defendant's proffered reason: (1) had no basis in fact; (2) did not actually motivate Defendant's action; or (3) was insufficient to motivate the action. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).  Plaintiff argues that a "pattern of discrimination by Defendant" demonstrates that her failure to obtain an FSC

was pretext for her termination and did not actually motivate Defendant's decision. (Doc. 29, at 6). Plaintiff's response to the motion for summary judgment describes in detail alleged discriminatory acts taken by Defendant towards minority employees. (*Id.* at 6–15).

The evidence offered by Plaintiff is insufficient for her racial discrimination claim to survive summary judgment. As an initial matter, Plaintiff's inability to demonstrate a *prima facie* case or racial discrimination closes off the claim. *See supra* Part IV.A.1. However, even were a *prima facie* case of racial discrimination made, Plaintiff's evidence does not demonstrate that the legitimate reason for termination offered by Defendant (Plaintiff's failure to get an FSC) was only a pretext. Much of Plaintiff's evidence of racial discrimination involves claims of discrimination against individuals other than herself. The Supreme Court and courts in this Circuit have held that "pattern and practice" evidence such as the evidence Plaintiff offers of discrimination against other employees is not generally appropriate to prove discrimination claims in an individual case. *See Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 876 (1984) ("The crucial difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination is manifest. The inquiry regarding an individual's claim is the reason for a particular employment decision, while 'at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decision making.'"). Moreover, in *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565 (6th Cir. 2004), the Sixth

Circuit directly held that "pattern and practice" evidence is inappropriate as a vehicle for proving discrimination in an individual case.

There is no evidence that Plaintiff was treated differently than fellow store managers because of her race. The fact remains that at the time of her termination, some 20 months after the imposition of the rule that all store managers had to have an FSC, Plaintiff was the only store manager out of the 14 in her district who had not obtained the FSC. (Doc. 25, at 18). Two of the other store managers in the district at the time Plaintiff was terminated (including the man who replaced Plaintiff at the Rookwood location) were African-American; they both remain employed by Defendant to this day. (Doc. 23, at 25). Plaintiff has offered no evidence that would tend to suggest that her race was a factor in any negative action taken by Defendant.

Accordingly, Plaintiff's claim of racial discrimination cannot survive summary judgment.

### B.    Plaintiff's claim of age discrimination is without merit.

Plaintiff's claim alleging age discrimination in employment is analyzed identically to her claim for racial employment discrimination under the burden of proof-shifting framework articulated by the Supreme Court in *McDonnell-Douglas Corp.*, 411 U.S. 792. *See Geller v. Henry County Bd. Of Educ.*, 613 F. App's 494, 499 (6th Cir. 2015) (applying the *McDonnell-Douglas Corp.* framework to a case of age discrimination in employment). Under this framework, the burden is on the plaintiff to first establish a *prima facie* case of discrimination. Once the plaintiff has done so, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the disputed

employment action. *McDonnell-Douglas Corp.*, 411 U.S. at 802. If the defendant can satisfy this burden, the burden shifts back to the plaintiff to demonstrate "that the proffered reason was not the true reason for the employment decision." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

> **1.** **Plaintiff cannot establish a *prima facie* case of age discrimination.**

In the specific context of age discrimination, a plaintiff can make a *prima facie* case by demonstrating that (1) she was a member of the protected class (40 years old or older); (2) she was subject to an adverse employment action; (3) she was otherwise qualified for the position; and (4) she was replaced by someone substantially younger or was treated less favorably than a substantially younger similarly situated person. *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582–83 (6th Cir. 1992); *see also Swanson v. McKesson Corp.*, 2006 WL 143223 (S.D. Ohio 2006). Plaintiff's case satisfies the first two elements, as she was 59 years old and was terminated from employment. (Doc. 29, at 29).

> **a.** **Plaintiff was unqualified for her position.**

Plaintiff cannot make a *prima facie* case of age discrimination because she was not qualified for the position of Starbucks store manager due to her failure to obtain an FSC. The analysis on this issue is identical to the earlier analysis on Plaintiff's lack of qualification for the position in the section of this Order discussing racial discrimination. *See supra* Part IV.A.1.a.

**b.      Plaintiff was not replaced by a non-class member nor treated differently from non-class members.**

Plaintiff's *prima facie* case of age discrimination also fails because she cannot demonstrate that she was either replaced by someone substantially younger or that she was treated differently relative to the same conduct as someone substantially younger. Courts within the Sixth Circuit have held that an age difference of less than 10 years will not satisfy the "substantially younger" element of an age discrimination *prima facie* case. *See, e.g.*, *Grosjean v. First Energy Corp.*, 349 F.3d 332, 338 (6th Cir. 2003) ("The overwhelming body of cases in most circuits has held that age differences of less than ten years of age are not significant enough to make out the fourth part of the age discrimination prima facie case."); *Zeman v. Goodrich Corp.*, 2005 WL 1668498, at *17 (S.D. Ohio July 16, 2005) ("Ohio courts have found that an age disparity of less than ten years is not sufficient to satisfy the 'substantially younger' element of an age discrimination prima facie case."). Plaintiff was 59 years old when she was terminated, and her replacement for Rookwood store manager was 51 years old at the time. (R. 23-1, at 4).

Accordingly, Plaintiff can only demonstrate a *prima facie* case of age discrimination if she can show that she was treated less favorably than a substantially younger similarly situated person. However, much like with her claim of racial discrimination, Plaintiff cannot make this showing because she was the only store manager in her district who had not already acquired an FSC at the time of her termination. (Doc. 23, at 7-8).

### 2. Defendant had a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.

Even were Plaintiff able to make a *prima facie* case of age discrimination, Defendant would still be able to shift the burden of proof back to Plaintiff by articulating a legitimate, nondiscriminatory reason for Plaintiff's termination. The analysis for this question is identical to the analysis in Part IV.A.2, *supra*—Defendant's legitimate, nondiscriminatory reason for terminating Plaintiff was her failure to obtain an FSC despite it being a requirement for all Starbucks store managers to do so.

### 3. Plaintiff cannot demonstrate that Defendant's nondiscriminatory reason for her termination was mere pretext.

Once Defendant can articulate a legitimate, nondiscriminatory reason for terminating Plaintiff, Plaintiff must demonstrate that the offered reason for termination was merely a pretext. The analysis of this question is identical to the analysis in Part IV.A.3, *supra*—Plaintiff cannot demonstrate that Defendant's alleged reason for terminating her was pretext. Accordingly, Plaintiff's age discrimination claim would not survive summary judgment were it to reach this stage (although it does not, as Plaintiff cannot make a *prima facie* case).

### C. Plaintiff's claim for retaliation is without merit.

Plaintiff's next claim is that she was terminated in retaliation for complaining of Defendant's discriminatory actions against herself and others, in violation of Title VII and Ohio Revised Code Ch. 4112. (*See* Doc. 4, at 7). Specifically, Defendant alleges that her complaints regarding minority hiring and her ignored requests to hire an assistant

manager at the Rookwood store caused Defendant to terminate her, using her lack of an

FSC as pretext.  (*Id.*).  Plaintiff's retaliation claim is evaluated under the same

*McDonnell-Douglas Corp.* burden shifting framework as her racial discrimination and

age discrimination claims.  *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir.

2000).

### 1.  Plaintiff cannot demonstrate a *prima facie* case of retaliation.

There are four elements Plaintiff must prove to establish a *prima facie* case of

retaliation: (1) Plaintiff engaged in protected activity; (2) Plaintiff's protected activity

was known to the defendant; (3) Plaintiff suffered an adverse employment action; and (4)

a causal link existed between the protected activity and the adverse action.  *Nguyen v.*

*City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000); *Fenton v. HiSAN Inc.*, 174 F.3d

827, 831 (6th Cir. 1999). The third element is not in question in this case, as Plaintiff was

terminated by Defendant.

### a.  Plaintiff can demonstrate that she engaged in protected activity.

In order to advance a *prima facie* claim of retaliation, Plaintiff must demonstrate

that she was at some point engaged in a "protected activity."  While Title VII does not

provide a definition of "protected activity" in regards to retaliation claims, the statute

provides two provisions describing an employer's illegal conduct resulting from an

employee's report of workplace discrimination, the so-called "opposition" and

"participation" clauses.  *Crawford v. Metro Gov't of Nashville & Davidson County*, 555

U.S. 271 (2009).  The opposition clause makes it unlawful for an employer to

discriminate against any employee because she has opposed any practice made unlawful

by 42 U.S.C. § 2000e-3(a). (*Id.*). Alternatively, the participation clause makes it unlawful for an employer to discriminate against any employee because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under 42 U.S.C. § 2000e-3(a). (*Id.*).

Plaintiff alleges that she engaged in protected activity by complaining about illegal discrimination at Starbucks. (Doc. 29, at 29). Specifically, Plaintiff alleges "she made several complaints of discrimination, including to her regional director Catherine Porter, District Manager Jessica Young and field specialist Mican Buynak, and then later in a complaint to Defendant's HR Hotline 'Make the Right Call' handled by Christopher Weinans." (*Id.*).

Plaintiff's referenced complaints to Porter, Young, and Buynak are not considered protected activity for purposes of advancing a *prima facie* retaliation claim. These communications, documented in an email Plaintiff sent to Ms. Porter on May 8, 2014, did not specifically allege racial discrimination by Defendant or its agents; in fact, the only time race was discussed was a cursory statement by Plaintiff where she asked Ms. Young if she "want[ed] me out because I am African-American." (Doc. 30-3, at 1). Case law in the Sixth Circuit supports the Court's finding that these communications alone do not constitute protected activity:

> A vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice. An employee may not invoke the protections of the Act by making a vague charge of discrimination. Otherwise, every adverse employment decision by an employer would be subject to a challenge under either state or federal civil rights legislation simply by an employee inserting a change of discrimination. In our view, such would constitute an intolerable intrusion

23

into the workplace. Thus, since [the plaintiff's] letter of August 26, 1985, does not fall under either the participation or opposition clauses, he has failed to state a cause of action."

*Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313–14 (6th Cir. 1989).

However, Plaintiff's complaint to the Starbucks "Make the Right Call" hotline was in fact protected activity as defined by the participation clause. The "Make the Right Call" hotline, run by the Starbucks human resources department, was the vehicle through which employees could complain about discriminatory acts by their superiors. According to Plaintiff, she did just that by calling the hotline immediately after being given her final written warning regarding the FSC requirement on June 25, 2014. (Doc. 29, at 17). During the call, Plaintiff complained that she was being discriminated against by her superiors on the basis of race. (*Id.*). As a result of her call, an internal investigation was opened. (*Id.*). Unlike Plaintiff's communications with Ms. Porter, Ms. Young, and Ms. Buynak, her calling the "Make the Right Call" hotline was not vague in its claim alleging discrimination. Accordingly, Plaintiff's call to the hotline was protected activity as needed to make a *prima facie* case of retaliation.

**b.    Plaintiff cannot establish a causal link between her engaging in protected activity and her termination.**

The next element of a *prima facie* case for retaliation that Plaintiff must demonstrate is that there was a causal link between her protected activity and her termination. Plaintiff cannot identify such a causal link, and as a result cannot state a *prima facie* retaliation case.

To establish a causal connection, Plaintiff must produce sufficient evidence for one to infer that Defendant would not have taken the adverse employment action had she not engaged in the protected activity. *Barrett v. Lucent Tech., Inc.*, 36 F. App'x 835 (6th Cir. 2002). In other words, to establish the causal connection, Plaintiff must produce sufficient evidence from which an inference could be drawn that she would not have been terminated had she not complained. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

Plaintiff's response gives no explanation of what evidence would lead one to believe that the phone call she made to the HR hotline caused her to be terminated. The evidence in fact strongly suggests that Plaintiff's termination was being considered before she made the call, as Plaintiff did not call the hotline until after she had received a "final written warning" given her 30 days to obtain her FSC or be terminated. (*See* Doc. 29, at 17). The only connection between the phone call and Plaintiff's termination borne out by the evidence is that she was fired a little more than a month after the call, but that timeline is easily explained by the final written warning, as Plaintiff did not get her FSC by the deadline and was terminated shortly thereafter. Furthermore, "temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence." *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 546 (6th Cir. 2003) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000)). Accordingly, Plaintiff cannot establish a causal connection between her calling the "Make the Right Call" hotline and her termination, and so cannot make a *prima facie* case of retaliation.

### 2. Defendant had a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.

Even were Plaintiff able to make a *prima facie* case of age discrimination, Defendant would still be able to shift the burden of proof back to Plaintiff by articulating a legitimate, nondiscriminatory reason for Plaintiff's termination. The analysis for this question is identical to the analysis in Part IV.A.2, *supra*—Defendant's legitimate, nondiscriminatory reason for terminating Plaintiff was her failure to obtain an FSC despite it being a requirement for all Starbucks store managers to do so.

### 3. Plaintiff cannot demonstrate that Defendant's nondiscriminatory reason for her termination was mere pretext.

Once Defendant can articulate a legitimate, nondiscriminatory reason for terminating Plaintiff, Plaintiff must demonstrate that the offered reason for termination was merely pretext. The analysis of this question is identical to the analysis in Part IV.A.3, *supra*—Plaintiff cannot demonstrate that Defendant's alleged reason for terminating her was a pretext for some different, unlawful reason. Accordingly, Plaintiff's age discrimination claim would not survive summary judgment were it to reach this stage (although it would not, as Plaintiff cannot make a *prima facie* case).

### D. Plaintiff's breach of contract claim fails as a matter of law.

Plaintiff's next claim against Defendant is one of breach of contract. Plaintiff claims that

> "[t]he correspondence, employee handbook, regular interviews, representations and actions of the parties constitute an agreement, either express or implied, between Plaintiff and Defendant, including, but not limited to, that Plaintiff did not have to retake the Food Safety Certification test prior to her leaving for vacation and/or as a prerequisite for continuing

26

employment, thus creating a legal and binding contract. . . . Defendant breached this contract by conduct including, but not limited to, terminating Plaintiff under these circumstances."

(Doc. 4, at 8).

Plaintiff's breach of contract claim is unavailing, as Plaintiff's employment relationship with Defendant was "at will" and was expressly not governed by any contract. Plaintiff's employment application which was signed by Plaintiff on February 4, 2000, contained the following clause: "I understand and agree that my employment is at will, which means that it is for no specified period and may be terminated by me or Starbucks at any time without prior notice for any reason." (Doc. 24-1, at 2). On October 16, 2004, Plaintiff executed a separate acknowledgment stating that she received the Partner Guide for U.S. Stores and would be expected to abide by its contents. (*Id.* at 3). Here again, Plaintiff acknowledged that her "employment with Starbucks Coffee Company is at will and may be terminated at any time, with or without notice." (*Id.*).

In Ohio, either party in an at-will employment relationship (employer or employee) may terminate the relationship at any time, even without cause, so long as the reason for the termination is not contrary to law. *Taylor v. J.A.G. Black Gold Mgt. Co.*, 2009 Ohio 4848, ¶ 12 (2009) (citing *Wright v. Honda Mfg., Inc.*, 653 N.E.2d 381 (1995) (Ohio 1995)). Furthermore, where there exists "at-will" language in an employment application and manual, as well as disclaimer language disavowing statements to the contrary, there can be no inference of contractual obligations to the parties. *Crase v. Shasta Bevs., Inc.*, 2012 WL 266406, 2012-Ohio-326, at ¶ 28 (Ohio Ct. App. 2012).

Plaintiff's response makes no attempt to argue that there was a contract governing her employment relationship with Defendant, instead only discussing her promissory estoppel claim. By failing to address her breach of contract claim in her response, Plaintiff has abandoned that claim. *See Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").

### E.    Plaintiff's promissory estoppel claim fails as a matter of law.

Plaintiff's next claim against Defendant alleges promissory estoppel. Specifically, Plaintiff argues that she reasonably relied upon a promise made by Defendant's agent, and that Defendant's decision to terminate Plaintiff for failing to get her FSC was in violation of this promise. (*See* Doc. 4, at 9).

Plaintiff's promissory estoppel claim relies upon a conversation she had with district manager Jessica Young on July 25, 2014. (Doc. 29, at 31). 30 days prior to that conversation, Plaintiff had been given a "Final Written Warning and Memorandum of Expectations," which stated in relevant part: "Food Safety Certification must be obtained by you within 30 days of receiving this memorandum. Failure to meet the Store Manager Food Safety Certification requirement will result in employment separation." (Doc. 23-1, at 21). The conversation between Plaintiff and Ms. Young was therefore on the last day afforded Plaintiff to obtain her FSC. Plaintiff alleges that during that conversation, she told Ms. Young that she had not yet completed her FSC. (Doc. 24, at 12). Plaintiff also allegedly told Ms. Young that Plaintiff had scheduled vacation beginning the next week.

According to Plaintiff, Ms. Young told Plaintiff to "email [Young] when you get it done." (*Id.*). Ms. Young did not tell Plaintiff not to take her vacation. (Doc. 25, at 25–26). Plaintiff left for vacation July 29 and returned August 4, at which time she was terminated. (Doc. 29, at 21).

Plaintiff argues that her conversation with Ms. Young led her to reasonably rely on the representation that she did not need to complete her FSC before her vacation. However, this argument is without merit. The doctrine of promissory estoppel is only applicable and binding to oral employment-at-will agreements in Ohio when a promise which the employer should reasonably expect to induce action or forbearance on the part of the employee does induce such action or forbearance, and if injustice can only be avoided by enforcement of the promise. *Mers v. Dispatch Printing Co.*, 483 N.E.2d 150, 155 (Ohio 1985). Here, even taking Plaintiff's recollection of the conversation between herself and Ms. Young as fact, Ms. Young's statement to "email [her] when you get it done" cannot reasonably be considered a promise that Plaintiff could finish her FSC more than a week after the termination deadline in her final written warning. Plaintiff's response places great importance on the fact that, during the July 25th conversation, Ms. Young did not say "complete [the FSC] today or don't take your vacation or you're going to be fired." (*See* Doc. 29, at 18–22). Ms. Young did not need to say that, as Plaintiff had already been given a termination deadline in her final written warning. (Doc. 23-1, at 21). Had Ms. Young actually said to Plaintiff that she did not need to finish the FSC by the deadline in the final written warning and that she could complete it after returning from vacation, Plaintiff would have a stronger argument for promissory estoppel.

However, the only thing Ms. Young actually said, according to Plaintiff, was "email me when you get it done." (Doc. 24, at 12). This is not a promise upon which one can reasonably rely. Therefore, Plaintiff's promissory estoppel claim is without merit.

### F. Plaintiff's intentional infliction of emotional distress claim fails as a matter of law.

Plaintiff has also raised a claim of intentional infliction of emotional distress (IIED) against Defendant. According to the Complaint:

> Defendant, by and through its agents and employees, intended to cause emotional distress to Plaintiff, or by its carelessness or recklessness, knew or should have known that the actions of its agents and employees would result in serious emotional distress to Plaintiff.
> Defendant's intentional actions as set forth above proximately caused injury to Plaintiff in the form of embarrassment, mental anguish, loss of reputation, loss of self-esteem, and other emotional distress, and caused physical injury in the form of other adverse health effects.
> Defendant acted willfully, maliciously, with spite and ill will, and with a reckless disregard for Plaintiff's legal rights.
> As a direct and proximate result of Defendant's actions, Plaintiff suffered damages.

(Doc. 4, at 9).

To survive summary judgment on her IIED claim, Plaintiff must produce evidence that: (1) Defendant intended to cause, or knew or should have known that its actions would result in serious emotional distress; (2) Defendant's conduct was so extreme and outrageous that it went beyond all possible bounds or decency and can be considered completely intolerable in a civilized community; (3) Defendant's actions proximately caused psychological injury to Plaintiff; and (4) Plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure. *Lombardo v. Mahoney*,

2009 Ohio App. LEXIS 4901, 2009-Ohio-5826, ¶ 6 (Ohio Ct. App. 2009) (citing *Ashcroft v. Mt. Sinai Med. Ctr.*, 588 N.E.2d 280 (8th Dist. 1990)).

The bar for an IIED claim is extremely high. As a general rule, liability for IIED will only be found in the most extreme circumstances. *Crable v. Nestle USA, Inc.*, 2006 Ohio App. LEXIS 2786, 2006-Ohio-2887, at ¶ 55 (Ohio Ct. App. 2006). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*, quoting *Yeager v. Local Union 20, Teamsters*, 453 N.E.2d 666, 671 (Ohio 1983).

Furthermore, Ohio courts have specifically found that: "[t]ermination of employment, without more, does not constitute the outrageous conduct required to establish a claim of intentional infliction of emotional distress, even when the employer knew that the decision was likely to upset the employee." *Price v. Carter Lumber Co.*, 2015 Ohio App. LEXIS 1468, 2015-Ohio-1522, at *31–32 (Ohio Ct. App. 2015) (citing *Gradisher v. Barberton Citizens Hosp., 9th Dist. Summit*, 2011 Ohio App. LEXIS 5119, 2011-Ohio-6243, ¶6 (Ohio Ct. App. 2011)).

Plaintiff has failed to articulate any particular conduct by Defendant or Defendant's agents which could be considered beyond all bounds of decency or completely intolerable in a civilized community. In her response, Plaintiff opted not to point to any particular conduct that was beyond the pale, but instead argued that the question should be "for a jury to decide." (Doc. 29, at 33). However, as Plaintiff cannot point to any of Defendant's actions or any consequences suffered by Plaintiff that are

beyond those circumstances one would associate with any situation where an employee is terminated, her IIED claim cannot survive summary judgment.

    **G.**    **Plaintiff's claim of breach of fiduciary duties fails as a matter of law.**

Plaintiff's Complaint also alleges that Defendant breached its fiduciary duties to Plaintiff in its actions leading to Plaintiff's termination. (Doc. 4, at 10). To prevail on a claim of breach of fiduciary duty, Plaintiff must show: (1) the existence of a duty arising from a fiduciary relationship, (2) the defendant's failure to observe that duty, and (3) an injury proximately resulting there from. When there is no fiduciary relationship between the parties, a claim of breach of fiduciary duty necessarily fails. *Cristino v. Adm'r*, 2012-Ohio-4420, 977 N.E.2d 742, at ¶16 (Ohio Ct. App. 2012).

Defendant's motion for summary judgment argued that Plaintiff had made no demonstration that Defendant owed her a fiduciary duty. (Doc. 23, at 30). Plaintiff's response failed to argue that a fiduciary duty existed. Therefore, Plaintiff has abandoned her breach of fiduciary duty claim, and summary judgment is warranted. *See Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").

    **H.**    **Plaintiff's claim of breach of the duties of good faith and fair dealing fails as a matter of law.**

Plaintiff's next claim is that Defendant breached its duty of good faith and fair dealing towards Defendant by "terminat[ing] the employment relationship for the purpose

of retaliating against [Plaintiff] or for reasons that are pretextual, discriminatory or contrary to the law and public policy." (Doc. 4, at 10). Ohio does not recognize a cause of action of breach of good faith and fair dealing when it involves the discharge of an at-will employee, or more generally, between an employer and employee. *See Vickers v. Wren Indus.*, 2005-Ohio-3656, 2005 Ohio App. LEXIS 3366 (Ohio Ct. App., Montgomery County 2006). Therefore, for Plaintiff's claim to survive summary judgment, she must demonstrate that she was not an at-will employee. However, as explained in Part IV.D, *supra*, Plaintiff was in fact an at-will employee of Defendant. Accordingly, Plaintiff's claim that Defendant breached a duty of good faith and fair dealing cannot survive summary judgment.

## I. Plaintiff's claim of fraudulent misrepresentation fails as a matter of law.

Plaintiff's next claim against Defendant alleges a cause of action for fraudulent misrepresentation. According to the Complaint:

> Defendant made various promises and/or representations to Plaintiff regarding her employment, including, but not limited to, completion of the Food Safety Certification test after her return from vacation, as well as her continued employment up to and following age 60.
> Defendant made these false representations with the knowledge of the falsity or with utter disregard and recklessness for their falsity because Defendant knowingly and willfully concealed its intention to terminate Plaintiff.
> Defendant's above actions were fraudulent, malicious, wanton and willful, gross and egregious, exhibited a conscious disregard for the rights of Plaintiff and had a great probability of causing her substantial harm.
> As a direct and proximate cause of Defendant's actions, Plaintiff has suffered damages and entitled to judgment.

(Doc. 4, at 11).

The elements of a claim of fraudulent misrepresentation are: (1) a representation, or where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying on it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. *Capital One Bank (USA), NA v. Reese*, 2015 Ohio App. LEXIS 3888, 2015-Ohio-4023, at ¶ 64 (Ohio Ct. App. 2015).

Plaintiff's fraudulent misrepresentation claim, much like her promissory estoppel claim, rests upon the telephone conversation she had with her district manager, Jessica Young, on July 25, 2014.  In Plaintiff's conversation, which occurred on the last day for Plaintiff to complete her FSC according to the final written warning she had received a month earlier, Plaintiff told Ms. Young that she had not yet completed the FSC and that she had vacation scheduled four days later; Young told Plaintiff to "email me when it was done."  However, even assuming the conversation occurred as Plaintiff described it, there was nothing in Ms. Young's words upon which Plaintiff could reasonably rely to further delay her completion of the FSC.  Therefore, Plaintiff's fraudulent misrepresentation claim cannot survive summary judgment.

### J.    Plaintiff's unjust enrichment claim fails as a matter of law.

Plaintiff's next claim against Defendant is one of unjust enrichment.  (Doc. 4, at 11). "In order to establish unjust enrichment, a plaintiff must prove (1) that the defendant received a benefit from the plaintiff and (2) that it is inequitable for the defendant to

retain the benefit." *Lauderdale v. Wells Fargo Home Mortg.*, 552 F. App'x 566, 571 (6th Cir. 2014).

Plaintiff fails to demonstrate any benefit that has been retained by Defendant. Plaintiff was paid full wages for all the time she worked, and her 401(k) with Defendant was transferred following her termination. Plaintiff argues that Defendant avoided having to pay various retirement benefits to Plaintiff by terminating her before she turned 60 years old (Doc. 29, at 34), but cites to no authority that recognizes this as an appropriate claim for unjust enrichment. Because Plaintiff was paid all she was due at the time of her termination, and Defendant therefore did not retain the benefit of any of Plaintiff's work without paying her, Plaintiff's unjust enrichment claim cannot survive summary judgment.

### K. Plaintiff's claim of wrongful termination against public policy fails as a matter of law.

Plaintiff's final claim against Defendant is that Defendant discharged her in violation of public policy. Specifically, the Complaint states:

> Defendant discharged Plaintiff for pretextual reasons, with full knowledge of Plaintiff's membership in several protected classes, to avoid paying higher wages and benefits to Plaintiff and prevent her from vesting in benefits she worked for versus a less qualified and/or younger replacement worker, and as retaliation for her expressing concerns about Defendant's lack of minority hiring and disparate treatment.
>
> A clear public policy exists sufficient to justify an exception to employment at will in the current circumstances as manifested by law, and dismissal of employees under the circumstances as in Plaintiff's case jeopardizes this public policy.

(Doc. 4, at 8).

To establish a public policy wrongful termination claim, Plaintiff must prove that: (1) a clear public policy exists; (2) dismissing employees under circumstances like Plaintiff's would jeopardize the public policy; (3) causation; and (4) the employer lacked overriding legitimate business justification for the dismissal. *Collins v. Rizkana*, 652, N.E.2d 653, 657–58 (Ohio 1995).

Plaintiff fails to identify a separate public policy outside of the public policies at issue in the other counts of her Complaint (*e.g.*, race discrimination, age discrimination, and retaliation) that are fully protected and embodied by other laws.  The law is clear that there is no need to recognize a common law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests.  *Leininger v. Pioneer Nat'l Latex*, 115 Ohio St. 3d 311, 2007-Ohio-4921, 875 N.E.2d 36, at ¶ 32; *see also Wiles v. Medina Auto Parts*, 96 Ohio St. 3d 240, 2002-Ohio-3994, 773 N.E.2d 526, at ¶ 15 (holding that there is no need to recognize a common law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests).

Plaintiff's response to the motion for summary judgment seems to concede that there is no unique public policy implicated by her termination, and that the claim is merely a "catch-all" should none of her other claims be found meritorious.  (Doc. 29, at 35) ("However, the fact is that, practically speaking, Plaintiff may not have an adequate statutory remedy. . . . If that is the case, then Plaintiff . . . must rely on public policy, including the policy against discrimination."). However, that is not the purpose of a claim alleging wrongful termination against public policy, and without naming a specific public

policy distinct from the policies implicated in Plaintiff's other claims, this claim cannot survive summary judgment.

## V. CONCLUSION

Accordingly, for these reasons, Defendant's motion for summary judgment (Doc. 23) is **GRANTED.** The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** in this Court.

**IT IS SO ORDERED**.

Date:   8/22/16                                                 *s/ Timothy S. Black*
                                                               Timothy S. Black
                                                               United States District Judge